Michael R. Smith, Counsel for Attendants for the Council of BENZEEN INC., and your Honors to the Board of Trustees. Please start by introducing yourself, and you won't be needing to reserve any time since there's nobody to rebut. Thanks. One of our favorite trick questions. I'll save the time for all your questions, so thank you very much. Michael Smith, appearing for the appellant, BENZEEN INC. Thank you, your Honors. Go ahead, please. Thank you, Judge Ferris. We're here on a related appeal. We had another appeal that was decided by the panel in December on different issues related to a motion for relief. After that motion for relief order was appealed, the bankruptcy judge, Judge Teig, ended up dismissing the Chapter 11 case. I've been doing this stuff for almost 40 years, and this was one of the most unusual dismissals I've ever seen. The hearing that was calendared here was a disclosure statement hearing on the first proposed disclosure statement by the debtor. There was only one objection filed to that disclosure statement by a mortgage creditor, and there was a discussion between the court and debtor's counsel about that creditor and the objection. When the debtor's counsel attempted to point out that the court's concerns had essentially been dealt with in the proposed plan to let this creditor on one piece of property have the property back, the court went into some other discussion and then sort of out of the blue said, okay, that's it. I'm dismissing this case. No advance notice to the debtor or anybody else. No request for dismissal by any party in interest. Let me stop you there. There was a notice in the original scheduling conference notice. It did say that dismissal was a possibility at the scheduling and status conference. I forgot what the name of the conference is, but the initial notice, the standard form notice, does say that. Yeah, I didn't see that here, Your Honor, but they do talk about that being a possibility, but I attached it to the appendix in Exhibit 10. Both the calendars, two-page calendars for the hearing where this occurred, along with the court's tentative ruling and dismissal was not mentioned in either one of those. In the transcript itself, which is Exhibit 11, the word dismissal doesn't even come up until the very end of the hearing. And then on the very last page of the transcript, the bankruptcy judge said, okay, this is dismissed. That was it. I mean, no warning at all. We've pointed out in the papers that notice is required for dismissal. It's required under Section 112B-1. It's required under the Rules 1017. The dismissal can occur, but there's got to be some notice here so the parties have some opportunity to respond, not that they're going to negate the dismissal, but I think due process requires that meaningful opportunity to at least respond to the threat or the possibility of dismissal, and that didn't occur here at all. What's happened with the properties? Sorry, Your Honor? The case has been dismissed. What's happened with the properties? I believe the one property was released back to the creditor, Bayview Mortgage, that was discussed in the hearing. The other property is still held by the debtor, and there's still litigation going on over that property, so they still have that. They're still hoping. I mean, the plan all along was to get some monies in to rehabilitate and repair the property and then sell it for a profit. They had initially been told by the original lender, Washington Mutual Bank, that they would talk about payoff options and a discounted payoff option based on the condition of the property at that time, and that debtor attempted to negotiate, couldn't get anywhere with that creditor, ended up filing the Chapter 11. After those negotiations had taken place, the loan, the first trustee loan, was assigned in the peculiar receivership type of proceedings that were going on with banks in the early 2000s from Washington Mutual to Chase Bank. So Chase Bank actually took over the loan almost four years after the debtor had acquired the property. The debtor didn't file the Chapter 11 until 2017, over seven years after it acquired the property. So this wasn't a flip-and-file kind of case. They had it. They were negotiating, trying to get the investors in there to deal with that. The property that was released was the one the debtor had a quarter interest in. There's one property the debtor had 25% interest in, one I believe the debtor wholly owned. Is it the 25% property that was released to the lender? Yes. Okay. Yes, I believe so, Your Honor. Can I ask, the judge made much of the involvement of Mr. Preys, if I'm pronouncing that correctly, Roman Preys, in this and other cases. What can you tell us about that? I didn't see much in the record about tying him to other cases. I mean, he clearly signed the petition for this debtor, but the judge was apparently aware of other cases he'd been involved in. This was kind of the subject of the related appeal before this panel, where relief was sought under 362 D-4, which deals with transfers or multiple filings. And if those are proven, that can give a basis for relief and in rem order against the property that can apply not only to the property and this debtor, but any future debtor or any future owner. And so that was the issue that was raised by Chase Bank in its motion for relief, that there had been other transfers, not really transfers per se, but bankruptcies filed relating to deeds of trust that were placed against the property. So apparently Mr. Preys and Benzene, in trying to negotiate with the creditor, had contacted or made an arrangement with another company to help them negotiate with the creditor, with the bank at the time. And the creditor, that company, had then filed, apparently filed bankruptcies relating to this property. But Mr. Preys, the president of Benzene, and Benzene weren't involved in any of those. And, in fact, the declaration that was submitted in the other proceeding, the motion for relief proceeding, indicated he didn't know anything about those, didn't have anything to do with those bankruptcy filings. They weren't by him, weren't signed by him, weren't by this debtor. And as soon as they found out that this company was doing that, that they immediately terminated their relationship and all of those transfers were reconveyed back. So those multiple transfers were allegations. I mean, one of the main things that we raised on appeal was the bank never proved anything about any of those multiple filings, nothing. No bankruptcy case number, no bankruptcy debtor, no status, how it affected their foreclosure or the loan or anything like that. So there wasn't any basis to make any of the findings the judge didn't make anyway? I don't think there was. That was the gist of it, right? I don't think there was. There was no evidentiary basis, no proper basis. And, in fact, the motion for relief brought by that creditor, which was Chase Bank on the other piece of property, contained a number of misstatements in it, like they had already held a foreclosure sale, they had already acquired title of the property. Well, we're not going to determine that now. Yeah, no, that's all done and under the water. And, in fact, in the related appeal, that portion of the order, the 362D4 portion, was vacated by the panel and remanded back to the bankruptcy court. So, you know, I think beyond the notice issue, which stands out pretty significantly here, is the best interest issue. You know, under Section 112B, if the court's going to consider dismissal, it has to consider all the alternatives with that, whether to convert the case to Chapter 7, whether to appoint a trustee or an examiner, and determine from that list of alternatives which is in the best interest of both the creditors and the estate and the debtor. It's all three of those parties are linked together there. And here, it doesn't look like the court made any determination of best interest. We've cited to a couple of the BAP opinions, Sullivan and Grego, that say, regardless of what's requested, the court has an independent obligation to conduct that analysis to make that determination that, yes, dismissal is in the best interest of all of these parties, and then after that, then the court can grant dismissal. So that never happened. Similar to the other related appeal, the court didn't make any findings of fact or conclusions of law at all. It was a discussion here in the beginning of a relatively short hearing. It looks to me like it didn't even last 15 minutes, but we're talking about an objection by a creditor and how the plan's going to deal with it. Then we get to dismissal, and, okay, that's it. I'm dismissing it. No findings. No conclusions. Nothing there for the court to point out that, yeah, it was best interest, yes, dismissal was warranted, nothing like that. And that was a problem from the earlier related appeal and one of the reasons why that order was vacated there. Now, you could imagine a situation where the disclosure statement might be the perfect time for the court to remark upon or make findings about the integrity of a case, because that's the time when the debtor or the proponent, usually the debtor, is sort of laying everything bare and here's what you need to know about the background, here's what we're going to do. But your position is that that simply never happened, right? I mean, what happened was just a dismissal without that kind of sifting and weighing and discussion and opportunity. I mean, the judge could have gone through and listed, hey, I think this case, even without the notice issue, which I don't necessarily think can be overcome, but in the evidentiary portion of it, hey, I think this is a bad case and here's why, one, two, three, four. The reason why I'm kind of stopping is because I think it's analogous to what you said about the duty to consider the best interest. You know, disclosure statements are one of the few places where we're supposed to consider independently whether there's enough information and whether this process has integrity. So it's conceivable, right? And, Your Honor, you know, too, at a lot of these hearings, there's a proposed plan and disclosure statement submitted. They don't always get either dealt with or confirmed. And if there are issues or objections, we're going to go amend it, come back, and we've got our first amended plan. No, it's iterative. No question about it. And so we get a chance to correct those things. And the debtor's attorney here asked to do that didn't get that shot. And so he walks in thinking, okay, I've got a tentative here with a couple of things that need to be stuck in my plan or disclosure statement. I'll amend it. I'll clean that up, fix it, come back to you, show you what it should say, what will satisfy you. But then we get sidetracked and, oh, I'm throwing you out anyway. And that didn't make any sense on those grounds either. So it could have been an opportunity. I know sometimes the courts ask, well, can't the court sua sponte dismiss? You know, and, well, of course. But even in those cases, there's got to be some advance notice and some meaningful opportunity for the debtor to respond or rebut that. And if there isn't, even a sua sponte is not going to stand. I think here that all the court needed to do was either take some time or more properly to state at the hearing, look, I've got some problems, not only with what you're presenting, but with this whole case and the way it's been prosecuted. I'm putting this on an OSC to dismiss. Come back in 30 days, I'm going to dismiss it, you know, whatever. And that would have been the appropriate way to go under these proceedings and these procedures, but not what happened here. Well, charitably, she did that in a very truncated manner. She came to the conclusion it was a fraud. And she also was fairly specific that you had your first chance to come here and show me how Mr. Praise was going to raise $500,000. Reading from the disclosure statement, there's nothing there. You're just smoke. And she's come to the conclusion that it's fraud. So what I hear you saying is that it's not wrong for her to conclude that it's fraud, but she needs to give you a chance to explain why it isn't and preferably to explain it better why it is fraud in her opinion. Well, absolutely we need to get the opportunity and notice, but I would dispute that there was any fraud at all. Well, that's going to the argument. But, I mean, when you say there was no basis in the record, you read it and you can read the tone. And from her experience with that case, she's concluding that if you want to walk it back to be a little more charitable, that it's not feasible. It will never be feasible. And that you have not taken the steps to show that it will ever be feasible based upon whatever happened, which unfortunately does not appear to be in the record. Well, I know that she felt that way at that time. I mean, obviously something happened here, but if I had been there or if other counsel had been there, I could have easily shown why it was feasible. I mean, this case wasn't even six months old. I mean, they were waiting for an investor to come up with the money to repair and rehab the property. Well, I don't know if that really helps, because there's other things that's not in the record, like how many payments have been made. That's usually a first question we want to ask, because if there's been a lengthy time when no payments have been made, there's numbers set out for the value. The value is conveniently much higher than the stated debt, but that was the case for the Bayview property, too, and that's been surrendered. So there's a lot of stuff here, and it kind of gets to your point that we just don't know. It may well be there. It just may need to be drawn out. I'll let you respond to that, and then your time is up. The issue of payments did come up, but at the same time I have to point out there was over a $3 million equity cushion protecting this creditor here, and that creditor took over the loan on an assignment after there had already been a default. So it's kind of like, oh, you bought a house. You know there's holes in the roof. Then when it rains, you come and complain that there's holes in the roof. You bought the house knowing there's holes in the roof. Isn't there still an obligation to pay? I'm sorry? Isn't there still an obligation to pay? I think there's an obligation to at least pay off, but in bankruptcy doesn't the equity cushion provide the adequate protection? And that's what I'm getting at. I've taken too much of your time, but I don't think we're going to answer those questions. We probably didn't get a chance down below either, but thank you, Your Honor. Thank you very much. Thank you. Good argument, and the matter is submitted.
judges: Faris, Lafferty, and Spraker